


UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| EVER ALEXANDER DIAZ RODRIGUEZ, | * * * | CIVIL ACTION NO. 6:14-cv-2716 |
| Plaintiff, | * * | |
| v. | * * | JUDGE MINALDI |
| U.S. CUSTOMS AND BORDER PROTECTION, ET AL., | * * * | |
| Defendant. | * | MAGISTRATE JUDGE KAY |

*********************************************************************

## MEMORANDUM RULING

Before the court is the petitioner's Complaint [Doc. 1] and Emergency Motion for Stay of Removal [Doc. 1-1], to which the respondents have filed an opposition [Doc. 3], to which the petitioners have filed a reply [Doc. 10]. After reviewing the petitioner's Complaint and Emergency Motion for Stay of Removal, the opposition and reply, and the relevant legal authority, the Court **DISMISSES, WITHOUT PREJUDICE FOR LACK OF JURISDICTION,** the petitioner's Complaint. Accordingly, petitioner's Emergency Motion for Stay of Removal is **DENIED, AS MOOT.**

## FACTS & PROCEDURAL HISTORY

The petitioner, Ever Alexander Diaz Rodriguez ("Diaz Rodriguez"), petitioned this court for a writ of habeas corpus, requesting a new credible fear determination, and for declaratory and injunctive relief on September 11, 2014.[1] Diaz Rodriguez is seeking an order vacating the expedited removal order and placing him in INA § 240 proceedings, arguing that there were

---
[1] Pet'r's Compl. [Doc. 1]

procedural and substantive defects in the expedited removal process and there is a substantial likelihood that he could establish a claim under the United Nations Convention Against Torture.[2]

In June 2014, Diaz Rodriguez left El Salvador after he received threats to his life from the Mara 18 gang.[3] Shortly after entering the United States, Diaz Rodriguez was apprehended by U.S. Border Patrol and placed in the expedited removal process.[4] Diaz Rodriguez received a negative credible fear determination after his interview with an asylum officer, and an immigration judge subsequently affirmed the negative credible fear finding.[5] Diaz Rodriguez is now subject to an expedited removal order pursuant to 8 U.S.C. § 1225(b)(1).[6]

On September 11, 2014, Diaz Rodriguez petitioned this court for a writ of habeas corpus and Emergency Motion for Stay of Removal. On September 16, 2014, the Government responded and asserted that the court is without jurisdiction to enter a stay or to hear Diaz Rodriguez's claim. Diaz Rodriguez responded on September 17th and asserted that the court has jurisdiction, and even if the court did not have jurisdiction under statute, refusal to hear Diaz Rodriguez's claim would be a violation of the Suspension Clause.

## LAW & ANALYSIS

Diaz Rodriguez raises two bases for the court to find jurisdiction in this case. First, the petitioner alleges that the expedited removal statute allows for review of his constitutional and legal claims. Second, the petitioner asserts that the application of the expedited removal statute in this matter would be a violation of the Suspension Clause.

---

[2] *Id.* ¶ 41.
[3] *Id.* ¶¶ 27, 30. Before leaving, Diaz Rodriguez contacted local police for help, but the police did not offer any assistance. *Id.* ¶ 29.
[4] *Id.* ¶ 32; Notice of Expedited Removal [Doc. 1-2]. Diaz Rodriguez also alleges significant defects in the administration of the expedited removal process, including deprivation of counsel and incorrect application of legal standards. Pet'r's Compl. [Doc. 1] ¶¶ 34, 37, 38.
[5] *Id.* ¶ 34, 39.
[6] Mem. of Law in Supp. Of Pet'r's Emergency Mot. for Stay of Removal [Doc. 1-3], at 2.

2

I.  **The Expedited Removal Statute**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). There is a presumption that a federal court lacks jurisdiction. *Id.* (citing *Turner v. Bank of North America,* 4 U.S. (4 Dall.) 8, 11 (1799)). The party asserting that jurisdiction exists has the burden of proving its existence. *Id.* (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 182-83 (1936)).

Diaz Rodriguez urges the court that 8 U.S.C. § 1252(e) provides the basis for jurisdiction in the case. As such, judicial review is limited to determinations of (1) whether the petitioner is an alien, (2) whether the petitioner was ordered removed under such section, and (3) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee . . . , or has been granted asylum . . . . 8 U.S.C. § 1252(e)(2); *see Solis-de Patino v. Pitts,* 823 F.Supp.2d 457, 460-61 (W.D. TX 2011). Further, the scope of the court's inquiry into whether the petitioner was ordered removed is limited to whether "such an order was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." 8 U.S.C. § 1252(e)(5).

The expedited removal statutes are express and unambiguous. The clarity of the language forecloses acrobatic attempts at interpretation. However, Diaz Rodriguez asks the court to do just that.

The petitioner urges the court to interpret the second sentence of Section 1252(e)(5) as evidence of Congress's intent to *only* bar review of whether a noncitizen is "actually inadmissible" or "entitled to any relief from removal." Such an interpretation would give the court the ability to consider whether a new credible fear interview is warranted without

disturbing the ultimate questions of admissibility and relief from removal. However, the second sentence of Section 1252(e)(5) cannot be read while ignoring the first sentence, which clearly states that the court's inquiry is limited to whether "such an order was issued and whether it relates to the petitioner." 8 U.S.C. § 1252(e)(5).

The second sentence of Section 1252(e)(5)—expressly declaring that there is no review of admissibility or relief from removal—is most fairly interpreted as a clarification and attempt by Congress to foreclose narrow interpretations of the first sentence of Section 1252(e)(5). This interpretation renders neither sentence "mere surplasage." *See Duncan v. Walker*, 533 U.S. 167, 172-74 (2001) (holding that a federal habeas petition is not an "application for State post-conviction or other collateral review" for tolling purposes because "State" was a constraint on both "post-conviction" and "other collateral review").

The court is mindful that interpreting the statute to limit review to whether "such an order was issued and whether it relates to the petitioner" leads to the result that the Executive branch can unilaterally decide who remains in the expedited removal system. But this is precisely how the expedited removal system is designed to function:

> The troubling reality of the expedited removal procedure is that a CBP officer can create the § 1182(a)(7) charge by deciding to convert the person's status from a non-immigrant with valid papers to an intending immigrant without the proper papers, and then that same officer, free from the risk of judicial oversight, can confirm his or her suspicions of the person's intentions and find the person guilty of that charge. The entire process—from the initial decision to convert the person's status to removal—can happen without any check on whether the person understood the proceedings, had an interpreter, or enjoyed any other safeguards. To say that this procedure is fraught with risk of arbitrary, mistaken, or discriminatory behavior . . . is not, however, to say that courts are free to disregard jurisdictional limitations.

*Khan v. Holder*, 608 F.3d 325, 329 (7th Cir. 2010).

4

Review is limited to three specific circumstances.[7] There is no dispute that Diaz Rodriguez is an alien. There is also no argument that Diaz Rodriguez was ordered removed pursuant to the expedited removal statute. The court is only permitted to inquire whether a removal order was issued and whether it relates to Diaz Rodriguez. There are no allegations as to either of these reviewable bases in the present complaint. There is likewise no argument made as to the last area subject to the court's review: whether Diaz Rodriguez can prove by a preponderance of the evidence that he is an alien lawfully admitted for permanent residence, has been admitted as a refugee, or has been granted asylum. Thus, because Diaz Rodriguez does not raise one of the grounds for review permitted by § 1252(e)(2), this court lacks jurisdiction to hear his complaint.

## II. The Suspension Clause

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. The Clause mandates "some judicial intervention in deportation cases." *INS v. St. Cyr*, 533 U.S. 289, 300 (2001). The question under *Boumediene* becomes whether "the statute stripping jurisdiction to issue the writ avoids the Suspension Clause mandate because Congress has provided adequate substitute procedures for habeas corpus." *Boumediene v. Bush*, 553 U.S. 723, 771 (2008).[8]

---

[7] Diaz Rodriguez directs the court's attention to *Smith v. U.S. Customs and Border Protection* for the proposition that the court could have jurisdiction to determine whether the noncitizen was properly in the expedited removal system at all. *Smith v. U.S. Customs and Border Protection*, 741 F.3d 1016 (9th Cir. 2014). This is an expansive interpretation of what the Ninth Circuit did in that case. In *Smith*, the court "accepted [Smith's] theory at face value" that he was not "ordered removed" because he was not properly removable. *Id.* at 1021. The Ninth Circuit performed a limited inquiry to determine whether Smith was, in fact, ordered removed under § 1225. *Id.* at 1021-22. Finding that Smith was ordered removed, the Ninth Circuit stated that the jurisdiction-stripping statute permitted the court to "go no further." *Id.* at 1022.

[8] While the Government argues that *Boumediene* should not apply because it is factually distinct, at least one circuit has found that the legal principles outlined in *Boumediene* are applicable in the context of immigration. *See Luna v. Holder*, 637 F.3d 85, 93 (2nd Cir. 2011) (citing *Boumediene*, 553 U.S. at 771).

Assuming that Diaz Rodriguez is not asking this court to impermissibly review the validity of the REAL ID Act as a whole,[9] the court finds that any rights the petitioner may have under the Suspension Clause are not violated in this case. The REAL ID Act was specifically enacted to provide a scheme of judicial review that was an "adequate and effective" substitute for habeas corpus and avoid the constitutional concerns raised by the Supreme Court in *St. Cyr. Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 326 (citing H.R. Rep. No. 109-72, at 175 (2005), U.S. Code Cong. & Admin. News 2005, at pp. 240, 300).

In *Garcia de Rincon v. Department of Homeland Security,* the 9th Circuit found that the narrow habeas review of removal orders does not raise the constitutional problems alluded to in *St. Cyr. Garcia de Rincon v. Dep't of Homeland Sec.,* 539 F.3d 1133, 1141 (9th Cir. 2008). De Rincon, a citizen of Mexico, first entered the United States in 1995 and married a U.S. citizen. *Id.* at 1135. In 1999, de Rincon was detained at the border after attempting to return from visiting her ailing mother in Mexico and then subjected to the expedited removal process. *Id.* Afterward, she returned to the United States, and in 2002, filed a Form I-485 Application for Adjustment of Status. *Id.* Immigrations Customs and Enforcement issued an immediate arrest warrant after reviewing de Rincon's application, and de Rincon's prior expedited removal order was reinstated. *Id.* at 1136. De Rincon challenged the reinstatement order and the underlying expedited removal order. *Id.* at 1136.

The Ninth Circuit found that it could not "avoid the unambiguous effect of the statutory restrictions on review of expedited removals" and dismissed de Rincon's habeas petition for lack of jurisdiction. *Id.* at 1142. Construing de Rincon's claim as grounded in the Suspension

---

[9] Challenges to the validity of determinations under Section 1225(b) and its implementation were only available for actions instituted in the United States District Court for the District of Columbia within 60 days of implementation of the challenged "section, regulation, directive, guideline or procedure." 8 U.S.C. § 1252(e)(3). Additionally, these regulations were sustained under such a challenge. *American Immigration Lawyers Ass'n v. Reno,* 18 F.Supp.2d 38, 54-56 (D.D.C. 1998).

Clause, the court adopted the reasoning in *Li v. Eddy* that the review of expedited removal orders does not raise constitutional problems as long as the petitioner has not been lawfully admitted. *de Rincon*, 539 F.3d at 1141 (citing *Li v. Eddy,* 259 F.3d 1132, 1135 (9th Cir. 2001), *vacated on reh'g as moot,* 3424 F.3d 1109 (9th Cir. 2003)). The court similarly rejected any sort of generalized due process claim. *Id.* (citing *Li*, 259 F.3d at 1136). The Fifth Circuit has also found the reasoning in *Li v. Eddy* to be persuasive. *See Brumme v. I.N.S.,* 275 F.3d 443, 448 (5th Cir. 2001) (citing *Li,* 259 F.3d at 1134-35).

Diaz Rodriguez attempts to distinguish his position from that of de Rincon's because he was not stopped at a border checkpoint but within the United States. This is a false distinction. The expedited removal statute applies with equal force to illegal entrants within 100 miles of the border who cannot show that they have been physical present in the United States continuously for the fourteen-day period immediately preceding the date of their apprehension. 8 U.S.C. § 1225(b)(1)(A)(iii). In such a situation, the entrants have not developed the ties or property interests that a lawful permanent resident or even an illegal entrant residing more than two weeks may have developed.

Significantly, although *de Rincon* and *Brumme* involved individuals stopped at the border, both of those individuals had significant ties to the United States. *See de Rincon*, 539 F.3d at 1135 (petitioner owned a home in Las Vegas and her children were U.S. citizens); and *Brumme*, 275 F.3d at 445 (petitioner owned a home in Tuscon and her husband was undergoing cancer treatment in the U.S.). De Rincon was residing in the United States when the expedited removal order was reinstated. *De Rincon,* 539 F.3d at 1135. The pertinent distinction, as described in *Li*, is whether the petitioner is a lawfully admitted alien. Diaz Rodriguez has not shown that he has been lawfully admitted, so the due process rights of a lawfully admitted citizen

are not implicated here.  Thus, the legislatively imposed limitation on review of his expedited removal order in his particular case does not run afoul of the Suspension Clause.[10]  Accordingly,

**IT IS ORDERED** that the petitioner's Complaint [Doc. 1] is **DISMISSED, WITHOUT PREJUDICE FOR LACK OF JURISDICTION.**

**IT IS FURTHER ORDERED** that the petitioner's Emergency Motion for Stay of Removal [Doc. 1-1] is **DENIED, AS MOOT**.

Lake Charles, Louisiana, this 18 day of September, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[10] Again, the court notes that it has no power to determine the constitutionality of the REAL ID Act in general. *See* 8 U.S.C. § 1252(e)(3).